RYAN, Appellant, vs. CAMERON and another, Respondents.

*May 31—June 28, 1955.*

For the appellant there was a brief by *Wiernick & Zurlo,* attorneys, and *Clinton A. Boone* of counsel, all of Milwaukee, and oral argument by *D. D. Zurlo.*

For the respondents there was a brief by *Kivett & Kasdorf,* attorneys, and *John R. Henderson* of counsel, all of Milwaukee, and oral argument by *Mr. Henderson.*

CURRIE, J.   The plaintiff Ryan sought to recover damages upon the ground that the defendant Mrs. Cameron was negligent in parking at night partly on the traveled portion of the highway the automobile operated by her, and that, due to such negligence, plaintiff was injured as a result of his car skidding on the icy surface of the highway and striking

a tree as a result of plaintiff swerving his own automobile in an attempt to pass around the parked vehicle.

The learned trial court granted defendants' motion for a directed verdict upon the ground that the evidence disclosed that the negligence of plaintiff was as great, if not greater, than that of the defendant Mrs. Vernon Cameron.

It is axiomatic that a trial court, in passing on a motion by a defendant for a directed verdict, is required to construe the evidence most favorably to the plaintiff. *Leonard v. Employers Mut. Liability Ins. Co.* (1953), 265 Wis. 464, 469, 62 N. W. (2d) 10; and *Engstrum v. Sentinel Co.* (1936), 221 Wis. 577, 578, 267 N. W. 536. Therefore, although there was sharp conflict in the testimony presented, we will chiefly refer to that which was favorable to the plaintiff in passing on the issue before us on this appeal of whether it was error to grant the directed verdict.

The defendant Mrs. Cameron, on the evening of March 4, 1953, visited her sister, Mrs. Bauer, whose home was located on the south side of the Puetz road in southern Milwaukee county. She made the trip from her own home some five miles distant in the automobile of her husband and, as she approached the Bauer home, she was driving in a westerly direction. She discovered that her mother had preceded her to the Bauer home and that the latter had parked her automobile in the Bauer private driveway leading at right angles southerly from the Puetz road. Mrs. Cameron concluded that there was not sufficient space left to the north of her mother's car to permit the parking of the Cameron automobile in the private driveway without the rear of the latter vehicle protruding into the highway. Because of such conclusion, Mrs. Cameron parked the automobile she was operating on the north side of the highway facing west without leaving any lights burning on the car. The traveled portion of Puetz road is from 20 to 22 feet wide and it was Mrs. Cameron's

testimony that half of her car was on the traveled portion of the road and half on the narrow shoulder to the north. A deputy sheriff testified that Mrs. Cameron could not have been off the traveled portion of the highway very much— "only about a couple of inches at best."

Most of the testimony was to the effect that there was not sufficient room to the north of the parked automobile of Mrs. Cameron's mother in the Bauer driveway to have permitted Mrs. Cameron also to park her husband's car in such driveway without protruding into the highway. Nevertheless, Mrs. Bauer, the sister of Mrs. Cameron, testified that the driveway was from 75 to 100 feet long, although she thought it was closer to 75 feet than it was to 100 feet; and that her mother had parked about halfway up the driveway. This was credible testimony which the jury might well have accepted as true in passing on the question of whether Mrs. Cameron violated sec. 85.19 (1), Stats.,[1] in parking her husband's automobile on the highway when it was "practical to park" the same "off the roadway of such highway." In leaving the vehicle standing on the roadway without any lights, Mrs. Cameron thereby violated sec. 85.06 (5),[2] which constituted negligence *per se* on her part.

---

[1] Sec. 85.19 (1) No person shall park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway outside a business or residence district when it is practical to park, stop, or leave such vehicle standing off the roadway of such highway, provided that in no event shall any person park, stop, or leave standing any vehicle, whether attended or unattended, upon any highway unless a clear and unobstructed width of no less than 15 feet upon the roadway of such highway opposite such standing vehicle shall be left for the free passage of other vehicles thereon, nor unless a clear view of such vehicle may be obtained from a distance of 200 feet in each direction along such highway.

[2] Sec. 85.06 (5) Every motor vehicle, when in use upon, or parked upon or immediately adjacent to, a traveled portion of a highway shall display on the rear a tail lamp so constructed and placed to show a red light from the rear plainly visible from a distance of 500 feet to the rear of such vehicle. . . .

The plaintiff resides on the Puetz road approximately one-half mile to the east of the Bauer home. On the evening of the accident he drove his automobile westerly on such highway at about 10 p. m. The road was icy and slippery. To the east of the Bauer residence there are two hills, the higher of the two being the one to the east. As plaintiff came over the brow of this higher hill he saw the lights of another car approaching from the opposite direction and thereupon put his headlights on low beam. Shortly after coming over the second hill when approximately 100 to 110 feet west of the parked Cameron car he saw it for the first time. He testified that when about 75 feet distant from such parked vehicle he attempted to turn his car to the left so as to pass around the Cameron automobile but in doing so his car skidded and he lost control, and his car struck a tree and he was injured. He estimated that he was traveling at a speed of 20 miles per hour at the time he first sighted the Cameron car, and the evidence disclosed that his automobile traveled about 300 feet from the point where he attempted to turn left until the tree was struck. He at no time applied his brakes.

This court has recognized that skidding on a slippery pavement may occur without fault. *Churchill v. Brock* (1953), 264 Wis. 23, 58 N. W. (2d) 290; and *Linden v. Miller* (1920), 172 Wis. 20, 177 N. W. 909. Under the facts testified to by plaintiff, a jury issue was presented as to whether plaintiff was negligent with respect to speed, lookout, and management and control. However, even if the jury were to have determined that plaintiff was negligent, we hold that the comparison of the negligence of plaintiff and Mrs. Cameron was for the jury. *Schroeder v. Kuntz* (1953), 263 Wis. 590, 594, 58 N. W. (2d) 445.

Counsel for the defendants contend that the precedent of *Hoffmann v. Krause* (1945), 247 Wis. 565, 20 N. W. (2d) 546, requires affirmance of the trial court's direction of a verdict for the defendants. Such case, however, is clearly

distinguishable on its facts from the case at bar. The accident happened in broad daylight. A disabled truck was stopped in the roadway and an automobile was parked parallel to it into which milk cans were being transferred at the time of the accident. The operators of the two stopped vehicles had stationed a man in the road to warn approaching traffic. The plaintiff testified he approached in his car on an icy road at a speed of 20 miles per hour and sighted the two parked vehicles and the signalman when 300 feet away, applied his brakes, and skidded into the bank at the side of the road. The evidence established that plaintiff could have seen the parked vehicles and signalman from 400 to 600 feet away. This court affirmed the trial court in directing a verdict for the defendants. The gist of this court's opinion in that case is to be found in the following statement (p. 568) :

"The circumstances present may or may not imply negligence, but the result may not be charged to another who gave timely warning and who, as to the question of cause, cannot be required in reasonable anticipation to foresee that another, coming over the hill on an icy surface would drive so as to be unable to stop in 300 feet."

It is apparent that the facts in *Hoffmann v. Krause, supra,* differ markedly from those of the instant case in two respects. One is that plaintiff in the instant case had a visibility of approximately 100 feet traveling with his lights on low beam, as he was required to do because of the vehicle approaching from the west, as compared to that of the plaintiff in the *Hoffmann Case* of from 400 to 600 feet. Another is that the parking in the *Hoffmann Case* was due to a disabled vehicle and a signalman was stationed to warn approaching traffic, while in the instant case an automobile was parked without lights partly on the traveled portion of the highway.

It is further urged in behalf of the defendants that under the decision in *Walton v. Blauert* (1949), 256 Wis. 125, 40

N. W. (2d) 545, the negligence of the plaintiff Ryan constituted an intervening cause which relieved Mrs. Cameron from any liability as a result of her negligent parking. However, we pointed out in *McFee v. Harker* (1952), 261 Wis. 213, 222, 223, 52 N. W. (2d) 381, that the result reached in *Walton v. Blauert* cannot be reconciled with the opinion in *Schultz v. Brogan* (1947), 251 Wis. 390, 29 N. W. (2d) 719, nor with the principles enunciated in Restatement, 2 Torts, p. 1196, sec. 447, covering intervening cause, which principles we approved in the *McFee Case.*

The same argument herein advanced in behalf of the defendants as to intervening cause was rejected by this court in *Dombrowski v. Albrent Freight & Storage Corp.* (1953), 264 Wis. 440, 59 N. W. (2d) 465. Where intervening cause of another is interposed as a defense by a defendant charged with negligence who was the first actor, the jury is first required to find whether the found negligence of such first actor was a substantial factor in causing the accident on which liability is sought to be predicated. *Pfeifer v. Standard Gateway Theater, Inc.* (1952), 262 Wis. 229, 55 N. W. (2d) 29. If the jury does find that the negligence of the first actor was a substantial factor in causing the accident, then the defense of intervening cause is unavailing unless the court determines as a matter of law that there are policy factors which should relieve the first actor from liability. Ibid. As Professor Richard V. Campbell points out in his recent article in January, 1955 Wisconsin Law Review, 5, at page 40, it is at this point that the principles of Restatement, 2 Torts, p. 1196, sec. 447, should be used by the court as an aid in deciding such policy factors.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.